2021 IL App (1st) 200922-U

FIFTH DIVISION
Order filed: January 22, 2021

No. 1-20-0922

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| NICOLE LAZUKA n/k/a NICOLE SMITH, | ) | Cook County |
| | ) | |
| Petitioner and Counter-respondent-Appellee, | ) | |
| | ) | |
| | ) | |
| and | ) | No. 2010 D 12258 |
| | ) | |
| | ) | |
| PATRICK McGEADY, | ) | Honorable |
| | ) | Michael A. Forti, |
| Respondent and Counter-petitioner-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the order of the circuit court granting the petitioner's petition for relocation of the parties' minor children because she complied with the relocation provision of the parties' joint parenting order.

¶ 2    The respondent and counter-petitioner, Patrick McGeady (hereinafter referred to as the respondent), appeals from an order of the circuit court of Cook County, granting the petition for relocation of the parties' minor children filed by the petitioner and counter-respondent, Nicole

Smith (hereinafter referred to as the petitioner). On appeal, the respondent argues that the circuit court's determination that relocation to St. John, Indiana, was in the best interests of the minor children was against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3 The following recitation of facts is adduced from the pleadings, orders, and evidence of record. The petitioner and the respondent married in 2009, had two children during the course of their relationship, and later divorced in 2014.

¶ 4 On March 18, 2014, the circuit court entered a judgment of dissolution of marriage, which incorporated both a marital settlement agreement and a joint parenting order into the dissolution judgment. Pursuant to the joint parenting order, the parties shared joint custody of their two sons, but they agreed that the petitioner's home would be the minor children's primary residence. Paragraph 3 of the joint parenting order also provided limitations on any future moves by the parties, stating, in pertinent part: "Neither party shall move more than sixty (60) miles further distant from the other without giving the other party at least sixty (60) day's [*sic*] notice of the change in residence to the other parent and providing a copy of the notice to the court."

¶ 5 On October 25, 2018, the petitioner filed her notice of intent to relocate with the minor children from her home in Lemont, Illinois, to St. John, Indiana, in August 2019. On November 14, 2018, the petitioner filed her petition for leave to relocate with the children to Indiana. At the time of filing her petition, the petitioner lived in Lemont, Illinois, and the respondent had moved from his home in Tinley Park, Illinois, to Naperville, Illinois.

¶ 6 On March 27, 2019, the petitioner filed a two-count amended petition, seeking (1) modification of parenting time (without requesting leave to relocate) because her St. John, Indiana, residence was within the 60-mile radius provided in the parties' joint parenting order, or in the

alternative, (2) leave to relocate to Indiana because it was in the best interest of the children. The respondent filed his response and affirmative defenses to the amended petition on April 23, 2019, denying the material allegations therein, but admitting that the joint parenting order is enforceable as a contract.

¶ 7     On March 13, 2019, the respondent filed a petition for modification of the dissolution judgment and primary allocation of parental responsibilities, seeking "temporary and permanent sole residency and allocation of parental responsibility of the two minor children," as well as requesting that the circuit court enjoin the petitioner from relocating to St. John, Indiana (modification petition). The respondent argued, *inter alia*, that the petitioner was aware of his intent to move from Tinley Park to Naperville for approximately two years, but she made no objection in an effort to use his move in support of her request to relocate the minor children to St. John, Indiana. On April 24, 2019, the petitioner responded to the respondent's modification petition, maintaining that he filed the petition in retaliation for her having requested leave of court to relocate the minor children, and that he moved to Naperville to hinder her move to St. John by causing a greater distance between the two residences.

¶ 8     On May 29, 2019, the circuit court set a hearing date on the petitioner's petition for relocation and the respondent's modification petition and appointed Agnes Olechno as the guardian *ad litem* for the minor children. Prior to the hearing, the guardian *ad litem* completed and filed two reports, concluding that the relocation was not in the best interest of the children.

¶ 9     The hearing on the petitioner's relocation petition and the respondent's modification petition began on November 1, 2019, and concluded in July 2020. The evidence produced during the hearing can be summarized as follows. The petitioner testified that the parties agreed in their

joint parenting order that each parent was free to move within 60 miles of the other parent and must give notice if moving more than 60 miles away from the other. In September 2018, she notified the respondent of her intent to move to St. John. The petitioner moved to St. John with the minor children in November 2019. The distance between the St. John residence and the respondent's Naperville home is 58.6 miles.

¶ 10     In an effort to ensure that the relocation would not negatively impact the respondent's parenting time, the petitioner suggested that they maintain their every other weekend schedule during the school year, but that the respondent enjoy extra parenting time over three-day weekends, most of the summer, and more holidays. She also volunteered to drive the children to Naperville and support the respondent in his efforts to see the children by paying for a hotel stay for him in St. John, paying for mileage, and meals. According to the petitioner, the children have a strong relationship with the respondent, and she expected it to remain strong despite the move. The petitioner acknowledged that the children initially did not agree with the move, but by January 2020, they appeared happy in their new St. John home. Additionally, the petitioner emphasized her role as the children's primary caretaker—picking them up from school almost daily, volunteering in the classrooms, serving on the PTO, chaperoning field trips, and making doctor appointments, as well as organizing and managing the children' schedules.

¶ 11     The respondent testified that, in 2016 or 2017, he told the petitioner that he would be moving to Naperville, but did not have the financial means at that time. He admitted that the petitioner informed him in September 2018 that she would be moving to St. John with the minor children, and that afterwards, he made an offer to purchase his Naperville home. He maintains that

it was his longtime plan to move to Naperville and that he made the offer to purchase his Naperville home once he had sufficient funds.

¶ 12    In June 2020, the respondent accepted a new job as a Virtual Chief Information Officer, which offered him the flexibility to work remotely, without designated days or times that he must physically be in his office. According to the respondent, his relationship with the children will be negatively impacted by their move to St. John.  He testified that the move would upend their current schedule, which includes special bonding nights like "Pizza Wednesdays," "stick hunting," and "daddy joke night." The respondent maintained that changing the uniqueness of his bond with the children by removing the ability to enjoy these special nights would devastate the boys. He describes himself as a good dad, referred to the petitioner as a good mother, and agreed with the guardian *ad litem's* conclusion that the petitioner "drives the bus" in the family.

¶ 13    The guardian *ad litem* testified consistent with her two reports—that relocation to Indiana was not in the best interest of the children and recommended that the petitioner's request to relocate be denied.

¶ 14    The petitioner's husband testified that he supports the children's relationship with their father and expressed a willingness to help the relationship remain intact by dropping the children off at the respondent's Naperville home or meeting him halfway between Naperville and St. John.

¶ 15    The respondent's partner of nine years testified that she and the respondent began looking for homes in Naperville in 2016, before learning of the petitioner's intent to move to St. John. She admitted that on September 28, 2018, the respondent was informed of the petitioner's intention to move, and that the respondent submitted an offer to purchase their Naperville home after being informed of the petitioner's intention to move. She described the respondent as a good father and

could not identify any negative parenting qualities. She also described her own relationship with the children as "loving" and expressed her enjoyment with participating in certain activities with them.

¶ 16    The petitioner's mother testified that she lives in Hazel Crest, Illinois and that the St. John residence is closer to her home than the Lemont residence. She stated that she had a good relationship with the children and although she could not recall their preference for moving to Naperville or St. John, both boys were unhappy about leaving their friends in Lemont.

¶ 17    The petitioner's mother-in law testified that she has lived in St. John, Indiana, since 1975 and that she and her husband have provided weekly childcare for the children since 2014—driving from St. John to the petitioner's previous Lemont home.

¶ 18    On July 31, 2020, at the conclusion of the hearing and after considering all the evidence presented, the circuit court gave its oral ruling, stating that its decision would resolve the petitioner's petition for leave to relocate the minor children and the respondent's modification petition. The circuit court granted the petitioner's relocation petition thereby implicitly denying the respondent's modification petition. The circuit court found that relocation to St. John, Indiana was in the best interest of the children. In so doing, the circuit court offered extensive reasoning for its decision guided by the 11 factors enumerated in section 609.2 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609.2(g) (West 2016)).

¶ 19    The circuit court later entered a written order, which provided, in part that "the transcript from Judge Forti's July 31, 2020 oral ruling *** is the trial [c]ourt's final and official ruling" resolving both the petitioner's relocation petition and the respondent's modification petition. The written order further instructed the parties to prepare a modified parenting allocation judgment

giving the respondent "meaningful parenting time during the week, if he chooses, and significant parenting time during the children's summer and winter breaks." This appeal followed.

¶ 20    On appeal, the respondent maintains only that the circuit court's order granting the petitioner's relocation petition was against the manifest weight of the evidence. He makes no argument in his brief as to the propriety of the circuit's order disposing of his modification petition. Specifically, he maintains that the evidence established that moving the children to St. John, Indiana was not in their best interest. He lists numerous reasons in support of this conclusion, all of which amount to a request that this court reweigh the evidence on appeal. In response, the petitioner argues that the circuit court did not err in granting her relocation petition and asserts that she was not required to establish that the move would be in the best interest of the children pursuant to section 609.2 of the Act. She maintains that her relocation of the minor children to St. John was in compliance with the joint parenting order incorporated into the parties' dissolution judgment because the St. John residence was within 60 miles of the respondent's Naperville residence. We agree with the petitioner.

¶ 21    Section 502 of the Act governs the incorporation of an agreement of the parties into the judgment of dissolution (750 ILCS 5/502 (West 2016)) and our supreme court has determined that, if a joint parenting agreement is set forth in the judgment of dissolution or is incorporated by reference, it is enforceable as both an order of the court and as a contract. *In re Marriage of Coulter & Trinidad*, 2012 IL 113474, ¶ 17; 750 ILCS 5/502(e) (West 2016). A joint parenting agreement is a contract between the parties and the primary objective of the court is to give effect to the intent of the parties, which must be determined by the language of the agreement. See *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). Here, the parties entered into a joint parenting order that was incorporated

into the judgment of dissolution. Therefore, pursuant to *Coulter*, 2012 IL 113474, ¶ 17, it is enforceable as an order and a contract.

¶ 22    Paragraph 3 of the joint parenting order incorporated in the dissolution judgment contains a provision that limited future moves by either party, stating, in relevant part: "Neither party shall move more than sixty (60) miles further distant from the other without giving the other party at least sixty (60) day's [*sic*] notice of the change in residence to the other parent and providing a copy of the notice to the court." The plain language of the joint parenting order reflects that the parties contemplated that one or both of them might decide to move their residence. Here, the petitioner complied with the joint parenting order, moving from her home in Lemont, Illinois, to St. John, Indiana, which is undisputed by the parties to be within 60 miles of the respondent's Naperville, Illinois residence. Moreover, she also notified both the respondent and the court of her intention to relocate. The parties' joint parenting order does not mandate that either party prove that the relocation is in the best interest of the children pursuant to section 609.2 of the Act.

¶ 23    Further, the petitioner's relocation petition under section 609.2 of the Act was unnecessary, because she already had leave to relocate the children. See *Coulter*, 2012 IL 113474, ¶ 22. The parties agreed to relocation under certain conditions (a specific mile limit between residences) and presented their agreement to the circuit court as a signed joint parenting order which was incorporated into the dissolution judgment. Consequently, "the question of [the] best interests of the children was resolved by the parties" and their resolution should be given proper deference by the court. *Id.*, ¶ 28.

¶ 24    We note that in the respondent's reply brief he argues that the strength of the petitioner's argument that she was at liberty to permanently relocate outside of Illinois to St. John, Indiana

provided that she remain within the 60-mile limitation of their joint parenting order, is diminished by paragraph 13 of that same order which provides, in relevant part:

> "Neither parent shall remove the children from the State of Illinois during holidays and vacations without first informing the other parent of the children's whereabouts, the itinerary for all such trips and the date the children are scheduled to return to the State of Illinois. During these periods of time, the other parent is to have free access to the children by telephone at all reasonable times. Neither parent shall allow the children to travel outside the State of Illinois with family members other than the parent without first informing the other parent of the children's whereabouts, the itinerary for all such trips, the date the children are scheduled to return to the State of Illinois and obtaining the consent of the other parent, which consent shall not be unreasonably withheld."

We find the respondent's argument unavailing for two reasons. First, the provision of the joint parenting order upon which he relies governs travel, not permanent relocation, which is the subject of paragraph 3—setting forth the 60-mile limitation. Second, even if paragraph 13 were relevant to our analysis, it only requires that the travelling parent give notice to the other parent when leaving the state of Illinois—which she gave. The only provision of paragraph 13 requiring consent of the other parent is when the children are traveling with a family member other than a parent—which did not occur. Accordingly, we find that the petitioner's compliance with the joint parenting order, which contemplated the best interests of the children with respect to relocation, was sufficient to entitle her to relocate the children to St. John, eliminating the need for an additional analysis of the best interests of the children under section 609.2 of the Act.

¶ 25    We recognize that the circuit court, in granting the petitioner's petition, relied extensively on the 11 factors set forth in section 609.2 of the Act. However, this court may affirm the judgment of the circuit court on any basis that appears in the record, regardless of whether the circuit court relied upon that basis or whether the circuit court's reasoning was correct. *Retirement Plan for Chicago Transit Authority Employees v. Chicago Transit Authority*, 2020 IL App (1st) 182510, ¶ 34.  Based on the foregoing analysis, we find that the circuit court did not err when it granted the petitioner's relocation petition, and we affirm the judgment of the circuit court.

¶ 26    Affirmed.